IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| **RANDALL DANE WOODRUFF, JR.,** : | |
| : | |
| **Plaintiff,** : | |
| : | |
| v. : | Civil Action No. |
| : | 7:04-CV-96 (HL) |
| **CHIEF JUDGE ARTHUR MCLANE,** : | |
| **et al.,** : | |
| : | |
| **Defendants.** : | |

# ORDER

For reasons set forth more fully below, this case is dismissed with prejudice.

**I.  FACTS and PROCEDURAL HISTORY**

In an Order entered on April 7, 2005, the Court addressed Plaintiff's excessive filing habits and set forth the following:

> Plaintiff has been given a great deal of latitude in this case. Initially, Plaintiff violated Federal Rule of Civil Procedure 4(m) by failing to serve the Defendants named in his complaint within the proper time frame. (Doc. 11, Order at 3-4.) Nevertheless, the Court granted Plaintiff an extension. (Doc. 11, Order at 3-4.)
>
> Afterwards, Plaintiff filed several motions to amend his complaint. The sum of Plaintiff's proposed amended complaints named approximately forty Defendants. While the original complaint had only eight pages, the first amended complaint consisted of twenty-one pages. The third amended complaint climbed to fifty-eight pages. The fourth amended complaint soared to sixty pages. And the fifth amended complaint not only re-alleged the third and fourth amended complaints, but also incorporated by reference allegations that were identical.

The collective filings alleged violations of Georgia statutes too numerous to list, of various sections of the Georgia and United States Constitutions, and of many federal statutes. The factual assertions were mixed with legal conclusions, legal arguments, and were lost in rambling strings of legal citations of dubious relevance. The Court found these documents to embody improper shotgun-style tactics. (Doc. 110, Order at 3.) Further, it appeared from the returns of service filed by Plaintiff that he was serving parties identified in his proposed amended complaints–complaints that had yet to be accepted by the Court. . . . The Court, however, gave Plaintiff an opportunity to correct these defects. (Doc. 110, Order at 4-5.)

In addition to his motions to amend, Plaintiff filed several motions including those for injunctive relief: (1) Motion for Extension of Time to serve Defendants, Motion for Contempt of Court and/or Notice of Mandamus (Doc. 2); (2) Motion for Temporary Restraining Order (Doc. 8); (3) motion requesting, among other relief, the Court to issue immediate injunctive relief (Doc. 19); (4) Motion for Temporary Restraining Order (Doc. 105); and (5) Motion for Temporary Restraining Order or Preliminary Injunction (Doc. 106).

In sum, by February 16, 2005, Plaintiff had filed a deluge of motions and documents, many of which Plaintiff entitled "emergency motions." Plaintiff had also faxed voluminous documents to the Court without prior permission in violation of Local Rule of Civil Procedure 5.2. Further, Plaintiff's repeated calls to this Court's law clerks prompted the Court to write Plaintiff a letter instructing him not to contact these individuals. (Doc. 12., *Pro se* Letter.)

Concerned that the case was getting out of control, the Court held a status conference on February 16, 2005. During the status conference, the Court addressed, among other items, the administrative concerns it had regarding Plaintiff's communications with the Court, Plaintiff's complaint, and the proposed amendments to the complaint. In its February 17 Order, the Court set forth and augmented rulings made during the status conference. The February 17 Order instructed Plaintiff to recast his complaint. It further ordered that Plaintiff was not to file anything with the Court until he had completed this task.

> The Court held another hearing on February 24, 2005. At the end of the hearing, Plaintiff complained about what he perceived as the February 17 Order's "blanket injunction," which he believed denied him access to the courts. . . . Therefore, during the hearing the Court clarified the February 17 Order in open court.
>
> The Court stated that Plaintiff was not to telephone anyone in the undersigned's chambers staff, including law clerks and the undersigned. The Court also explained that while it normally welcomes telephone communications from lawyers or *pro se* litigants, Plaintiff had abused that privilege. The Court noted that Plaintiff had inundated the undersigned's office with faxed documents. Nevertheless, the Court also emphasized that these restrictions did not mean that Plaintiff could not communicate with the Court. Plaintiff was instructed that he could communicate with the Court by written motion.
>
> Specifically addressing the February 17 Order's instruction to Plaintiff to recast his complaint, the Court stated that the instruction was still in force. The Court indicated that Plaintiff needed to rethink, rewrite, clarify, and firm up his complaint so that all parties, and the Court, would be able to deal with the case efficiently. When the Court asked Plaintiff if he understood these instructions, Plaintiff responded in the affirmative.

(Order at 1-4, Doc. 135) (footnote omitted).

The April 7, 2005, Order also stated the following:

> Plaintiff shall not file anything in this case until he files his recast compliant, except Plaintiff may file: (1) other actions in federal court; (2) appeals from this case, if proper, to the Eleventh Circuit; (3) responses to motions filed by Defendants; (4) motions for clarification; or (5) a motion for recusal.

(Order at 8-9, Doc. 135.) Additionally, the Court ordered Plaintiff to file his recast complaint no later than May 1, 2005. As of May 5, 2005, Plaintiff had not yet filed his recast complaint.

Along with failing to file his recast complaint, Plaintiff has shown a shocking disregard for the Court's April 7, 2005, filing restriction. For example, on April 22, 2005, Plaintiff filed hundreds of pages of documents. The Court is unclear on Plaintiff's reasoning for filing the documents, which included approximately 123 returns of service, many of which were duplicates and or already on file with the Court. The documents also included approximately 15 cover letters addressed to various persons. None of the documents, however, constituted any of the five exceptions to the filing restriction, nor did they include a recast complaint.

On April 25, 2005, in violation of the filing restriction, Plaintiff filed three documents entitled "Open Records/USCR 21 Request." (Docs. 139, 140, 141.) These three documents indicate that the parties to whom they are addressed are "required" to produce various documents, and that the parties are "required to respond in 3 days under the open records act." All three documents incorrectly state, "Judge Lawson has indicated in Judge Lawson's order that the plaintiff has the right to access of the records plaintiff is requesting via discovery." The document addressed to the County Clerk goes so far as to state, "Judge Lawson has indicated in Judge Lawson's order that plaintiff can have access to the records plaintiff is requesting."

Plaintiff's statements in the April 25, 2005, filings are fraudulent misrepresentations of one of this Court's orders. The Court has never issued an order stating that Plaintiff can

have access to records, much less a right to access the specific records he requests. Rather, in an Order entered on April 22, 2005, the Court stated, "[I]f Plaintiff desires information regarding alleged ex parte communications between Defendants and the Court, Plaintiff shall direct his inquiries to Defendants during the course of discovery." (Order at 2, Doc. 137.) Discovery has not begun in this case, and Plaintiff is still under the aforementioned filing restriction.

On April 27, 2005, in violation of the filing restriction, Plaintiff filed a document that included motions to reconsider.[1] The April 7, 2005, Order, however, did not permit Plaintiff to file motions for reconsideration until he had filed his recast complaint. Therefore, in an Order entered on May 2, 2005, the Court stated, "[T]he Court disregards Plaintiff's requests for reconsideration, as he has yet to file his recast complaint. Additionally, the Court may decide to take further action against Plaintiff for violating the April 7, 2005, Order." (Order at 1-2, Doc. 147.)

On April 29, 2005, in violation of the filing restriction, Plaintiff filed a request for a TRO, or in the alternative, a preliminary injunction. The April 29, 2005, filing also contained a request to correct court records. In the 40-page motion, which was accompanied by a 24-page affidavit, Plaintiff, once again, claims that he is under the threat

---

[1] The April 27, 2005, filings also included a what Plaintiff asked the Court to construe as a Motion for Recusal. As the April 7, 2005, Order expressly allowed a motion for recusal, the Court does not use this filing as a basis for dismissing Plaintiff's case.

of false arrest and asserts various grievances about the manner in which Defendant, Judge Horkan, is administering Plaintiff's divorce case.

On May 2, 2005, in violation of the filing restriction, Plaintiff filed an amended motion for injunctive relief consisting of 42 pages, and Plaintiff filed a motion regarding his recast complaint, along with two additional returns of service.[2]  On May 3, 2005, in violation of the filing restriction, Plaintiff filed a second amended emergency motion, an affidavit, and a memorandum in support of his motion.  The May 3, 2005, documents totaled 52 pages.

While Plaintiff has seen fit to file endless documents, many of which were in violation of this Court's orders, as of May 5, 2005, he had yet to file his recast complaint.

## II.   PAGE LIMITATION

Plaintiff claims that he cannot comply with the Court's directive limiting his recast complaint to 25 pages. (Mot. at 1, Doc. 149.)  Plaintiff says that he has tried to recast his complaint but that "it was more than double than what the Court is requesting."  (Mot. at 2, Doc. 149.)  Plaintiff feels that he will be losing valuable rights if he is forced to comply with the 25-page limit.  The Court construes Plaintiff's argument to state, generally, that due process under the Fifth Amendment entitles complainants to file in federal court a

---

[2]The May 2, 2005, filing also included a motion regarding Plaintiff's recast complaint, which the Court construed as a motion for clarification.  The May 2, 2005 motion for clarification is addressed below in Section II of this Order.  As the April 7, 2005, filing restriction permitted motions for clarification, the Court does not use the motion as a basis for dismissing Plaintiff's case.

complaint of whatever length they deem necessary to present their allegations. Plaintiff cites no authority supporting such a proposition, and this Court knows of none.

Instead, "[p]age limits, as well as other restrictions on litigants, are ordinary practices employed by courts to assist in the efficient management of the cases before them." Cunningham v. Becker, 96 F. Supp. 2d 369, 374 (D. Del. 2000) (citing Watts v. Thompson, 116 F.3d 220, 224 (7th Cir.1997), Jones v. Barnes, 463 U.S. 745, 752 (1983); Weeks v. Angelone, 176 F.3d 249, 271 (4th Cir. 1999); Oostendorp v. Khanna, 937 F.2d 1177, 1179 (7th Cir. 1991); Campbell v. Kincheloe, 829 F.2d 1453, 1467 n.8 (9th Cir. 1987); In re Continental Airlines, Inc., C.A. No. 94-474-SLR, 1995 WL 704783, at *6 (D.Del. Oct.19, 1995); Brown v. Doe, 803 F. Supp. 932, 947-48 (S.D.N.Y. 1992). Page limitations are neither inherently objectionable nor unreasonable. Cunningham, 96 F. Supp. 2d at 374. Further, Federal Rule of Civil Procedure 8(a) provides a complaint must contain "a short, plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Also, Rule 8(e) requires that "each averment of a pleading . . . be simple, concise, and direct." Fed. R. Civ. P. 8(e).

Here, the Court was fully justified in placing a page limit on Plaintiff's recast complaint. Plaintiff has a history of filing long-winded, rambling, shotgun-style pleadings. The page limitation was ordered to avoid such a blunderbuss complaint and to conform with Rule 8's requirements without unduly restricting Plaintiff's ability to communicate the facts

supporting his case. While the page limitations may have caused Plaintiff to make certain strategic choices as to which allegations and defendants to include and which to omit, it was not in and of itself unreasonable. In fact, the Court believes that Plaintiff can recast his complaint in 25 pages because the Court has read Plaintiff's original complaint, along with the amendments he has filed in the past, and due to his many filings, has some indication of those items with which Plaintiff would like to amend his complaint. Thus, Plaintiff's due process argument fails; moreover, his belief that he could not comply with the Court's Order to recast his complaint in 25 pages provides no basis for failing to file the recast complaint.

### III.    MOTION TO DISMISS

Defendants have filed several motions to dismiss in this case, (Docs. 58, 59, 64, 111, 113, and 127) which the Court has deferred ruling upon with the expectation that Plaintiff's recast complaint would render them moot. Additionally, the Court construes a response by various Defendants to several motions made by Plaintiff (Doc. 146) as a motion to dismiss, because the response called for this Court to dismiss the case.

Federal Rule of Civil Procedure 41(b) provides the following:

> For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.

Fed. R. Civ. P. 41(b). In addition to its authority under Rule 41(b), the court's power to

dismiss a case is also "an inherent aspect of its authority to enforce its orders and insure prompt disposition of law suits." Jones v. Graham, 709 F.2d 1457, 1458 (11th Cir. 1983). The Eleventh Circuit has "clearly stated that because dismissal is considered a drastic sanction, a district court may only implement it, as a last resort, when: (1) a party engages in a clear pattern of delay or willful contempt (contumacious conduct); and (2) the district court specifically finds that lesser sanctions would not suffice." World Thrust Films, Inc. v. Int'l Family Entm't, Inc., 41 F.3d 1454, 1456 (11th Cir. 1995).

Here, as set forth in the fact section of this Order, Plaintiff has engaged in a clear pattern of delay and willful contempt. For example, he has failed to file a recast complaint, instead, filing dilatory motions of dubious merit – either on the eve of or after the deadline established for filing the recast complaint. Plus, Plaintiff has filed hundreds of pages of documents in violation of this Court's filing restrictions. Moreover, and perhaps most appalling, Plaintiff has fraudulently misrepresented an Order of this Court.

Plaintiff's conduct demands dismissal of his case, and this Court specifically finds that lesser sanctions will not suffice. In an effort to curtail Plaintiff's frantic filings until he had recast his complaint, the Court placed a filing restriction on Plaintiff, which has met with little success. The Court has also given specific guidance to Plaintiff regarding recasting his complaint, which Plaintiff refuses to follow. Plaintiff's repeated violations of this Court's filing restrictions and directives regarding recasting his complaint demonstrate that the further exercise of the Court's injunctive powers will not deter Plaintiff. Further, the Court's many warnings to Plaintiff regarding his conduct have gone unheeded. Also,

because Plaintiff refuses to recast his complaint – the foundation of his lawsuit – the Court cannot imagine how any other lesser sanction could suffice in moving this case forward. Thus, dismissal is the only tool this Court believes will do.

## IV.   CONCLUSION

In its February 17 and April 7 Orders, the Court warned Plaintiff that the failure to recast his complaint would result in sanctions including, but not limited to, dismissal. Plaintiff has ignored this Court's admonitions. He has repeatedly and willfully disobeyed this Court's filing restrictions. Moreover, Plaintiff has fraudulently misrepresented one of this Court's orders. For these reasons, Defendants' most recent motion to dismiss (Doc. 146) is granted; this case is dismissed with prejudice. All pending motions are now moot.[3]

So ordered, this the 6th day of May, 2005.

　　　　　　　　　　　　　　　　　　　/s/ Hugh Lawson
　　　　　　　　　　　　　　　　　　**HUGH LAWSON, Judge**

---

[3] While this Order moots all pending motions, due to the supposedly urgent nature of Plaintiff's emergency motion requesting injunctive relief (Doc. 145, amended by Docs. 150, 155), which moves the Court to prevent Plaintiff from being arrested pursuant to an alleged order issued by Defendant Judge Frank Horkan in Plaintiff's ongoing divorce case, the Court has made a cursory review. Plaintiff's motion offers very little in the way of new allegations. In fact, most of the arguments contained in the motion have already been addressed and found to be deficient by this Court in its March 8, 2005 Order. Under the analysis articulated in the March 8, 2005, Order, Plaintiff's new allegations also fail to make the necessary showings to obtain injunctive relief under the declaratory decree provision of 42 U.S.C.A. § 1983 (West 2003) and the Younger abstention doctrine.