# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# VALDOSTA DIVISION

**RANDALL DANE WOODRUFF, JR.,** :
                                 :
    Plaintiff,               :
                                 :
v.                                :    Civil Action No. 7:04-cv-96 (HL)
                                 :
**CHIEF JUDGE ARTHUR McLANE,** :
**et al.,**                            :
                                 :
    Defendants.         :
_____

## **ORDER**

This matter is before the Court on Defendants' Motions for Attorney's Fees [docs 165 & 176]. After consideration of the record and the briefs of the parties, the Court grants the Motions, in part, and denies, in part, as more fully stated herein.

**I.    BACKGROUND**

Plaintiff, Randall Dane Woodruff, Jr., proceeding pro se, filed a complaint in this Court on September 1, 2004. As originally filed, the complaint was eight pages long and named the following persons as Defendants: Chief Judge Arthur McLane; Judge Frank Horkan; Stephanie Stanfill; Judge Hammil; Sara Crow (Clerk of the Court); Melissa Norman; Laura Chamblee; Judge Ronnie Lane; Judge Cato Wallace; Judicial Employees 1-4; Sam Dennis; Gregory, Christy, Maniklal & Dennis; Burke Sherwood; and Sherwood & Associates. Plaintiff's complaint was brought pursuant to, among other things, 42 U.S.C. § 1983. Briefly stated, Plaintiff alleged that the named judges, attorneys and court employees, most of whom operate

in Lowndes County, Georgia, had conspired to violate his constitutional rights during the course of his divorce proceeding.

After he filed his complaint, Plaintiff was arrested by Lowndes County Sheriff's officers and housed in the Lowndes County jail. Plaintiff was incarcerated from December 21, 2004 through December 30, 2004. After he was released from jail, Plaintiff wrote a letter to the Court, seeking additional time to serve the Defendants. Plaintiff also complained about the treatment he received while incarcerated and expressed his intention to include the Lowndes County Sheriff's office in the lawsuit already pending. Thereafter, on January 6, 2005, Plaintiff filed five affidavits. Plaintiff then filed a motion for injunctive relief, a motion to amend the complaint, and an amended complaint.

After a flurry of other motions were filed by Plaintiff and ruled on by the Court, the Defendants filed motions to dismiss the complaint. In the meantime, Plaintiff sought to amend his complaint on five different occasions, each time seeking to add new parties. In an effort to control what it believed to be "abusive, obstructionist, and harassing pleadings," in an Order entered on February 17, 2005, the Court ruled on the pending motions, and identified those Defendants who were properly before the Court. The Court also instructed Plaintiff to file a proper, recast complaint. The Court warned Plaintiff that failure to comply with its directives could result in sanctions. The Court also limited the Plaintiff's ability to file improper pleadings with the Court, and set the matter down for an evidentiary hearing.

On February 24, 2005, the Court conducted a lengthy hearing on Plaintiff's Motion for Injunctive Relief. The primary focus of the hearing was to determine whether the Court had

jurisdiction to enjoin the state from arresting Plaintiff on a contempt charge. By order entered March 8, 2005, the Court denied Plaintiff's request for injunctive relief, finding that it lacked jurisdiction to provide the relief requested. The Court later extended the time for Plaintiff to file a recast complaint to May 1, 2005. Rather than submitting a recast complaint in a timely manner, Plaintiff filed various motions for extensions as well as for reconsideration. By Order entered May 6, 2005, the Court dismissed the case with prejudice because of Plaintiff's failure to file a recast complaint and because of Plaintiff's failure to comply with other directives of the Court. After the case was dismissed, Defendants filed the motions for attorney's fees at issue here.

Even after the case was dismissed, Plaintiff continued to submit motions, briefs, affidavits and other documents to the Court. Many of Plaintiff's briefs exceeded the page limitations set by the rules of this Court. In an Order entered June 22, 2005, the Court detailed the contents and excesses of the various motions and other documents and disposed of the various motions. After the Order of June 22, 2005, was entered, Plaintiff filed an appeal with the United States Court of Appeals for the Eleventh Circuit. In a succinct opinion, the Eleventh Circuit upheld the rulings of this Court, dismissed the appeal as "frivolous and entirely without merit," and directed the clerk of the appellate court to accept no further filings except one motion for reconsideration. (Order of August 31, 2005.) The Court now finds it appropriate to rule on the motions for attorney's fees.

## II.     LEGAL ANALYSIS

### A.     Fees Pursuant to 42 U.S.C.A. § 1988.

Defendants have moved for attorney's fees pursuant to 42 U.S.C.A. § 1988. Section 1988 permits a district court to award attorney's fees to the prevailing party in certain designated civil rights cases, including those brought under 42 U.S.C. § 1983. Section 1988 provides, in part, as follows: "In any action or proceeding to enforce a provision of section[] . . . 1983 . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . ." 42 U.S.C.A. § 1988(b) (West 2003). The standards which govern an award of attorney's fees in § 1983 cases are the same as those which govern awards of attorney's fees in Title VII cases, as established by the Supreme Court of the United States in Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 98 S. Ct. 694 (1978). *See* Hughes v. Rowe, 449 U.S. 5, 14, 101 S. Ct. 173, 178 (1980) (applying Title VII standard to § 1983 case).

Under the Christiansburg standard, the term "prevailing party" authorizes an award of attorney's fees to either successful plaintiffs or successful defendants. Here, Plaintiff's claims were dismissed with prejudice, but without a determination as to their merits. Nevertheless, Defendants are "prevailing parties" within the intent of the statute. As the former Fifth Circuit noted in a similar context: "Although there has not been an adjudication on the merits in the sense of a weighing of facts, there remains the fact that a dismissal with prejudice is deemed an adjudication on the merits for the purposes of res judicata. As such, the [defendant] has clearly prevailed in this litigation." Anthony v. Marion County General Hosp., 617 F.2d 1164, 1169-70

(5th Cir. 1980) (case dismissed for want of prosecution after plaintiff repeatedly failed to comply with court's directives).

With respect to an award of attorney's fees to a prevailing party, the Supreme Court has directed that "a prevailing *plaintiff* ordinarily is to be awarded attorney's fees in all but special circumstances." Christiansburg, 434 U.S. at 417, 98 S. Ct. at 698. However, a different standard applies to an award of attorney's fees to a prevailing *defendant*: "In sum, a district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." Id. at 421, 98 S. Ct. at 700.

The Eleventh Circuit has cautioned that the standard for awarding attorney's fees to a prevailing defendant is a "'stringent' one." Walker v. Nationsbank of Fla., 53 F.3d 1548, 1558 (11th Cir. 1995) (quoting Hughes, 449 U.S. at 14, 101 S. Ct. at 178). Furthermore, the court has emphasized that "the district court should resist the temptation to conclude that because a plaintiff did not ultimately prevail, the action must have been unreasonable or without foundation." Id. at 1558. Accordingly, the appellate court has directed district courts considering such issues to "focus on the question of whether the case is seriously lacking in arguable merit." Id. Moreover, as the Supreme Court emphasized, "the term 'meritless' is to be understood as meaning groundless or without foundation, rather than simply that the plaintiff has ultimately lost his case." Christiansburg, 434 U.S. at 421, 98 S. Ct. at 700.

In Anthony, the former Fifth Circuit cautioned that a plaintiff's failure to prosecute a case does not make the case meritless, stating:

5

> We do not believe that the mere failure to prosecute, without more, establishes as a matter of law that a claim is either frivolous or vexatious. There is absolutely no evidence in the record concerning the merits of [plaintiff's] claim. It may or may not be frivolous. While [plaintiff's] unreasonable delay and inaction is certainly a factor to be considered, it does not, by itself, constitute vexatiousness or harassment.

Anthony, 617 F.2d at 1170. In this case, as in Anthony, the dismissal of Plaintiff's complaint for failure to comply with the directives of the Court does not establish as a matter of law that Plaintiff's complaint was meritless. Moreover, in spite of the remarkable volume of paperwork filed by Plaintiff, and the substantial number of orders issued by the Court, the Court has never undertaken to assess the merits of Plaintiff's claims. Thus, there is presently no legal basis for a finding that Plaintiff's case was frivolous as contemplated by the Supreme Court in Christiansburg and no basis for an award of attorney's fees under § 1988. To the extent that Defendants' Motions seek attorney's fees pursuant to § 1988, the Motions are denied.

### B. Fees Pursuant to the Court's Inherent Powers

In addition to their request for fees under § 1988, Defendants argue that the Court should award attorney's fees under its inherent powers. The power to award attorney's fees for vexatious litigation is an inherent power that predates the passage of § 1988. Relying on a line of cases dating back to 1951, the Supreme Court noted in 1973, "Thus, it is unquestioned that a federal court may award counsel fees to a successful party when his opponent has acted 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" Hall v. Cole, 412 U.S. 1, 5, 93 S. Ct. 1943, 1946 (1973) (quoting 6 J. Moore, Federal Practice § 54.77(2), p. 1709 (2d ed. 1972)). In other contexts, unreasonable and vexatious conduct has been defined as conduct that

multiplies the proceedings. Schwartz v. Million Air, Inc., 341 F.3d 1220, 1225 (11th Cir. 2003) (construing 28 U.S.C. § 1927).[1] Id.

In Kreager v. Solomon & Flanagan, P.A., 775 F.2d 1541, 1543 (11th Cir. 1985), the Eleventh Circuit reaffirmed the inherent power of a court to assess attorney's fees against a party who has acted in bad faith, vexatiously, wantonly or for oppressive reasons. In Kreager, the court added that a court's inherent power to assess attorney's fees applies not only to suits filed in bad faith, but to "bad faith acts preceding and during litigation." Kreager, 775 F.2d at 1543. More recently, in Byrne v. Nezhat, 261 F.3d 1075, 1106 (11th Cir. 2001), the Eleventh Circuit reaffirmed that a district court has, as part of its inherent authority, the power to assess attorney's fees against a party who has acted in bad faith.

Throughout this proceeding, Plaintiff has filed numerous and voluminous pleadings. The Court addressed Plaintiff's excessive filings in an Order entered on February 17, 2005, by denying all of Plaintiff's pending motions to amend, identifying those Defendants who were before the Court at that time, and directing Plaintiff to file a recast complaint. In the same Order, the Court prohibited Plaintiff from filing anything else with the Court until the recast complaint was filed. When Plaintiff continued to file other pleadings, and failed to file his

---

[1] In Christiansburg, the Supreme Court also endorsed an award of attorney's fees if the action is found to be vexatious when brought. Christiansburg, 343 U.S. at 421, 98 S. Ct. at 700. The Court explained in Christiansburg that "the term 'vexatious' in no way implies that the plaintiff's subjective bad faith is a necessary prerequisite to a fee award against him." Id. However, most courts applying Christiansburg focus on the question of whether "the case is so lacking in arguable merit as to be groundless or without foundation," Sullivan v. Sch. Bd. of Pinellas County, 773 F.2d 1182, 1189 (11th Cir. 1985) (internal quotations omitted), rather than on whether the case was vexatious when brought. Moreover, in this case, the issue is not whether the case was vexatious when brought but whether Plaintiff's conduct after initiating the case was vexatious.

recast complaint, Plaintiff received the ultimate sanction: dismissal of his complaint with prejudice. Thus, while Plaintiff's conduct prior to dismissal of the complaint was certainly vexatious, it has already been the subject of a punitive action.

Even after his case was dismissed, Plaintiff continued his vexatious filings, however. In fact, Plaintiff filed more than 25 documents after judgment was entered. These documents were in addition to documents related to pending motions for attorney's fees and appeal. Many of the documents were excessively lengthy, some numbered 50 or 60 pages, and other documents were discovery requests. These documents were the subject of yet another Order, entered on June 22, 2005, in which the Court struck many of Plaintiff's filings from the record.

The Court finds that the voluminous and multiplicious filings made after dismissal were, in fact, vexatious and warrant an award of attorney's fees. Plaintiff disregarded the Court's Order directing him to amend his complaint, then, when his complaint was dismissed, assaulted the Court and the parties with excessive and irrelevant filings. Moreover, Plaintiff's filings were made despite repeated warnings from the Court to Plaintiff to limit his filings and, as such, demonstrate bad faith. Therefore, to the extent that Defendants' Motions seek attorney's fees pursuant to the Court's inherent powers, the Motions are granted.

### III.   CONCLUSION

In sum, this Court cannot say whether Plaintiff's complaint, as initially filed, was frivolous or meritless, never having had to reach the merits of the case. However, Plaintiff's conduct during the course of the litigation became increasingly vexatious and harassing, particularly after the complaint was dismissed. Under the circumstances, therefore, the Court

finds that an award of attorney's fees is appropriate as to those fees that were generated as a result of Plaintiff's litigious conduct following the dismissal of his complaint. The Motions for Attorney's Fees [docs 165 & 176] are, therefore, granted, in part, and denied, in part. Defendants are directed to submit to the Court billing statements and affidavits showing the fees incurred as a result of Plaintiff's unnecessary filings occurring after judgment was entered for Defendants on May 9, 2005.[2] The billing statements and affidavits must be filed not later than 20 days from the date of entry of this Order.

Plaintiff shall have 20 days from the date of service of the latter of Defendants' filings in which to file a single response. The response should address the reasonableness of the fees sought by Defendants and Plaintiff's ability to pay an award of attorney's fees. Because Plaintiff will be responding to two submissions, he will be allowed a total of 30 pages for his response. Any response that fails to comply with the directives of this Order, or otherwise fails to comply with the local rules of this Court, will not be considered. Late submissions will not be considered. No hearing will be held.

**SO ORDERED**, this the 19th day of January, 2006.

s/   Hugh Lawson
**HUGH LAWSON, JUDGE**

---

[2] The term "unnecessary filings" refers to those filings that were unrelated to an appeal or motions for attorney's fees.